68832-7

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.

CUMIS Insurance Society Inc., an Iowa
corporation,

        Plaintiff,

vs.

CLAUDIA    SCHORRIG    and    JOLENE
SULLIVAN on their own behalves and as the
asserted representatives of a putative, not-yet-
certified class; IBM SOUTHEAST EMPLOYEES'
FEDERAL   CREDIT   UNION,   a   Federally
chartered corporation; SOUTHEAST SERVICES
ORGANIZATION, INC., a Florida corporation;
and BARRY HUGHES,

        Defendants.

_____/

## COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW the Plaintiff, CUMIS Insurance Society, Inc, an Iowa corporation
("CUMIS"), by and through its undersigned counsel, and seeks a declaratory judgment
against the defendants and in support thereof states:

### JURISDICTION AND VENUE

1.      This is an action for declaratory judgment brought pursuant to 28 U.S.C. §
2201.

2.      CUMIS is an Iowa corporation with its principal place of business in
Madison, Wisconsin.

3.      Claudia Schorrig ("Schorrig") is a resident of the State of Florida and
resides in Boca Raton, Florida, and is asserted to be one of the representatives of a not-
yet-certified class in the case of *Claudia Schorrig, et al v. IBM Southeast Employees'*

CASE NO.

*Federal Credit Union, et al,* now pending in the United States District Court for the Southern District of Florida , Case Number 09-80973 ("Schorrig suit").

4.      Jolene Sullivan ("Sullivan") is a resident of the State of Florida and resides in Pompano Beach, Florida, and is asserted to be one of the representatives of a not-yet-certified class in the Schorrig suit.

5.      IBM Southeast Employees' Federal Credit Union ("credit union") is a federally chartered corporation under 12 U.S.C. § 1461 *et seq.*   The corporation's principal place of business is in Boca Raton, Florida.

6.      Southeast Services Organization, Inc. ("Southeast") is a Florida corporation with its principal place of business in Boca Raton, Florida.

7.      Barry Hughes ("Hughes") is a resident of the State of Florida and Resides in Leesfield, Florida, and at all material times is alleged to have been the vice president of the credit union and the president of Southeast.

8.      All events giving rise to this complaint for declaratory judgment occurred in Palm Beach County, Florida, and therefore venue is proper within the Southern District of Florida.

9.      The amount in controversy in this action for declaratory judgment exceeds $75,000 and therefore this Honorable Court has subject mater jurisdiction pursuant to 28 U.S.C. § 1332.

**FACTS**

10.     The credit union, Southeast, and Hughes have been sued by Schorrig and Sullivan, in a third amended class action complaint in the Schorrig suit.  (Exhibit 1)

2

CASE NO.

Without admitting the truth of the allegations of that pleading or its exhibits herein, the third amended complaint asserts that Schorrig and Sullivan are putative class representatives who assert that they lost money on investments as a result of improper investment advice.

11.    Included as Exhibit B to the Schorrig suit is a copy of the financial services agreement between the credit union and Wellstone.  The contract provided that:

a.   The credit union was obligated to provide an area within its offices for "service centers" of Wellstone.  (¶1.2.a)

b.   The credit union "is responsible for the compliance aspects of the program pursuant to the requirements of the National Credit Union Administration's NCUA Letter No. 150" and "will promote the services of Wellstone."  (¶1.2.c; e)

c.   The credit union is obligated to facilitate Wellstone's exercise of supervision and control over sales representatives.  (¶1.1d.(2))

d.   The two entities were required to jointly develop a marketing strategy and materials.  (¶1.1f; 1.4)

e.   Wellstone represented its financial soundness, membership in good standing with NASD, freedom from disciplinary or license revocation proceedings, and the like.  (¶4.1.a-k)

f.   Wellstone's records were available for review by the credit union.  (¶4.1.*l*; 6.1)

g.   Wellstone agreed to indemnify the credit union for loses occasioned by its "breach of any of its duties, representations or obligations contemplated by this

CASE NO.

Agreement or arising out of any negligent act or omission, gross negligence, or willful misconduct." (¶7.1)

12.     The Schorrig suit is currently scheduled for trial in January, 2012.

13.     CUMIS is authorized to issue policies of insurance within the State of Florida.

14.     CUMIS issued its "CUMIS special insurance package policy" number 058606-11 ("CUMIS policy") to the credit union and Southeast.   (Exhibit 2)   This "director, volunteer and employee insurance policy" had effective dates of December 15, 2008, to December 15, 2009.

15.     The CUMIS policy contains the following provisions (any *emphasis is supplied*):

**COVERAGES (form SP 720 05 97)**

**DIRECTORS, VOLUNTEERS OR EMPLOYEES:**  CUMIS will pay any "loss" that the "insureds" become legally obligated to pay as a result of any "claim" against the insureds" that is first made during an Annual Policy Period.

**DEFINITIONS (form SP 720 05 97)**

**1. Claim.**  "Claim" means:
    a.    A Civil action or proceeding, or an arbitration or other alternative dispute resolution proceeding, for a "wrongful act" which could result in a binding adjudication of liability for damages or other civil relief; or
    b.    A written demand for money damages for a "wrongful act"; or
    c.    A formal administrative or regulatory proceeding for a "wrongful act" commenced by the filing of a notice of charges, formal investigative order or similar document.
"Claim" does not mean or include any criminal or grand jury proceedings.

CASE NO.

**DEFINITION (form SP 728 10 99 – non-compensatory damages endorsement)**

**Loss.** "Loss" means the following amounts that the "insureds" may become legally obligated to pay as the result of a "claim":

    a. "Defense costs"; or

    b. Compensatory damages awarded in judgments; or

    c. Non-compensatory damages, multiplied or enhanced compensatory damages, or multiplied or enhanced attorneys' fees awarded in judgments, unless uninsurable under applicable law; or

    d. Amounts paid in settlements entered into with the consent of CUMIS.

**DEFINITIONS (form SP 109 03 08 – entity endorsement)**

**Insureds**

The Insured Definition is replaced with the following:

"Insureds" means any of the:

    1. "Directors"; or

    2. "Volunteers"; or

    3. "Employees"; or

    4. "Credit union."

However, "employees" are not "insureds" when NO COVERAGE is shown on the Declarations as the Annual Aggregate Limit of Liability for "employees."

**Wrongful Act**

The Wrongful Act Definition in the Directors, Volunteers And Employees Insurance Policy and the Policy Change Endorsement is replaced with the following:

    1. "Wrongful act" means any actual or alleged act, error, omission, neglect, breach of duty, misstatement or misleading statement committed or attempted by the "credit union."

    2. "Wrongful act" also means any actual or alleged act, error, omission, neglect, breach of duty, misstatement or misleading statement committed or attempted by an "insured" other than the "credit union" in the discharge of their respective duties as "directors, "volunteers" or "employees" of the "credit union," or any matter claimed against them solely by reason of their status as such "directors," "volunteers" or "employees."

CASE NO.

**DEFINITION (form SP 724 04 96 – service organization endorsement)**

"Credit union" means the entity shown on the Declarations and Southeast Services Org. Inc.

**EXCLUSIONS (form SP 720 05 97)**

**2.  Dishonest Or Willful Acts**.  Based upon, brought about, *resulting directly or indirectly from, or contributed to in fact by any dishonest, fraudulent, intentional or willful misconduct or act, or any willful or intentional violation of any law, statute or regulation*, by the "insureds." However, this exclusion will apply only if:

    a.  The "claim" results in a finding of fact, judgment or final adjudication establishing that such misconduct, act or violation was committed by the "insureds"; and

    b.  Such misconduct, act or violation was material to the "claim."

**5.  Investments**.  Based upon or *resulting directly or indirectly from investments, investment or trading transactions, investment or trading losses, or trading of any kind or nature, whether authorized or unauthorized, genuine or fictitious, and whether transacted in the name of the "credit union" or in any other name, genuine or fictitious*.
However, this exclusion will not apply to "defense costs" in connection with such "claims" against the "insureds" for which coverage would be afforded under this policy but for this exclusion, subject to a *maximum aggregate amount of "defense costs" for all such "claims" against all "insureds" of either $100,000* or the remaining applicable Annual Aggregate Limit Of Liability, whichever is less.

**CONDITIONS (form SP 720 05 97)**

**9.  DEFENSE OF CLAIMS.**  ... If CUMIS pays "defense costs" that are within any deductible, the "insureds" will reimburse CUMIS promptly upon request for the amount of such payments. ...  In any event, CUMIS will not be liable for any "defense costs," settlement or admitted or agreed liability of the "insureds" without CUMIS's prior consent, which will not be unreasonably withheld.

**10.  INTERRELATED CLAIMS.**  Multiple "claims" will be considered a single "claim" under this policy. ...

CASE NO.

**11. LEGAL ACTION AGAINST CUMIS.**

1.      Legal action against CUMIS under this Policy may not be brought by any person or entity unless:

       a. There has been full compliance with all the terms of this Policy; and

       b. The "insured's obligation to pay has finally been determined:

           1) By final judgment; or

           2) In a written agreement executed by the "insureds," the claimant and CUMIS.

2.      A person or entity does not have the right under this policy to join CUMIS as a party to any action or proceeding in which a "claim" against the "insureds" is being asserted.

**14. NON-ASSIGNMENT.**  Neither this Policy nor any rights under this Policy can be assigned without the written consent of CUMIS.

**ADDITIONAL DEFINITIONS (form SP 109 03 08)**

**PROFESSIONAL SERVICES.**  "Professional services" means those *services performed or required to be performed by an "insured," pursuant to an agreement (written or otherwise)* for a fee, commission or other monetary consideration or other remuneration that inures to the benefit of an "insured."

"Professional services" include, but are not limited to:

Medical or health services; appraisal services; architectural or construction management services; the practice of law or the rendering of legal services; accountant services; income tax preparation and tax counseling services; services provide as an enrolled actuary as that term is used in connection with ERISA; designing, building or maintenance of any website or the content of any website; software development including creating of any source or operating code; data or payroll processing services; credit card processing services; *estate, retirement or financial planning services; trustee and trust administration services*; mortgage brokerage services; *sale of securities or investments*; sale or placement of any title insurance; sale or placement of any life, disability or property and causualty insurance; sale or placement of any collateral protection or GAP insurance; or sale, placement or administration of any debt cancellation program.

**ADDITIONAL EXCLUSIONS (form SP 109 03 08)**

**ASSUMED CONTRACT LIABILITY.**  Based upon or *resulting directly or indirectly from the liability of a party assumed pursuant to a*

CASE NO.

*contract*, except liability for "loss' that the "insured" would have had in the absence of such contract.

**BREACH OF CONTRACT.**   Based upon or *resulting directly or indirectly from any breach of contract.*

**FRAUD.**   Based upon or *resulting directly or indirectly from any deliberately fraudulent act or omission, or a willful violation of any common or statutory law or regulation*, if a judgment or other final adjudication adverse to an "insured' *or to any person for whose actions as "insured" is legal liable*, establishes such deliberately fraudulent act or omission or willful violation.

**IMPROPER USE OF FUNDS.**   Based upon or *resulting directly or indirectly from the commingling, misappropriation, or improper use of funds.*

**INVESTMENT BANKING.**
1.      Based upon or resulting directly or indirectly from:
The underwriting, securitizing, syndicating, promoting or market making (as defined in Sec. 3(A)(38) of the Securities Exchange Act of 1934 as amended (if U.S.C. Sec. 78(a) et seq)) of any debt or equity security or other evidence of indebtedness, or any other similar investment banking activity; ...

**PROFESSIONAL SERVICE.**   Based upon or *resulting directly or indirectly from any "professional service."*

16.     CUMIS is providing the credit union, Southeast, and Hughes with a defense to the Schorrig suit as set forth in its letter dated January 12, 2011. (Exhibit 3) This letter provides, in part, that the allegations and claims asserted in the Schorrig suit fall within exclusions to the policy, but that defense costs up to $100,000 nevertheless will be paid on behalf of the CUMIS insureds.

17.     Despite the clear restriction of defense obligations to $100,000 for acts alleged to fall within the "investments" exclusion, and despite the application of additional exclusions to coverage, CUMIS has agreed to provide defense costs to its

CASE NO.

insureds above this $100,000 limit under a strict reservation of rights to recover such additional expenses upon entry of a declaratory judgment affirming the absence of coverage under the insurance policy.  (Exhibit 4)

### COUNT I – DECLARATORY JUDGMENT

18.     CUMIS adopts and incorporates by reference the allegations of paragraphs 1 through 17 as though fully set forth herein.

19.     CUMIS asserts that no coverage is available for the Schorrig suit based on the provisions, terms, and exclusions of its policy of insurance as attached as Exhibit 1 based on the facts as asserted, alleged, and/or evidence adduced in the Schorrig suit.

20.     CUMIS is in doubt as to its rights and obligations pursuant to the contents of its policy of insurance with the credit union, Southeast, and Hughes.

21.     CUMIS asserts that the allegations of the Schorrig suit fall in whole or in part within the "dishonest or willful acts" exclusion of its policy.

22.     CUMIS asserts that the allegations of the Schorrig suit fall in whole or in part within the "investments" exclusion of its policy.

23.     CUMIS asserts that it is entitled to reimbursement of defense costs pursuant to the "defense of claims" condition of its policy.

24.     CUMIS asserts that all claims as alleged in the Schorrig suit fall in whole or in part within the "assumed contract liability" exclusion under the additional exclusions portion of its policy.

CASE NO.

25.    CUMIS asserts that all claims as alleged in the Schorrig suit fall in whole or in part within the "breach of contract" exclusion under the additional exclusions portion of its policy.

26.    CUMIS asserts that all claims as alleged in the Schorrig suit fall in whole or in part within the "fraud" exclusion under the additional exclusions portion of its policy.

27.    CUMIS asserts that all claims as alleged in the Schorrig suit fall in whole or in part within the "improper use of funds" exclusion under the additional exclusions portion of its policy.

28.    CUMIS asserts that all claims as alleged in the Schorrig suit fall in whole or in part within the "investment banking" exclusion under the additional exclusions portion of its policy.

29.    CUMIS asserts that all claims as alleged in the Schorrig suit fall in whole or in part within the "professional service" exclusion under the additional exclusions portion of its policy.

30.    CUMIS seeks a judicial determination as to whether the facts as asserted, alleged, and/or evidence adduced in the Schorrig suit fall outside of the coverage afforded under the terms, conditions, and exclusions of the CUMIS policy that is attached as Exhibit 1.

31.    CUMIS further seeks a judicial determination of its right to reimbursement of all defense costs in excess of the $100,000 limit as set forth in the "investments" exclusion of its policy of insurance.

CASE NO.

WHEREFORE, CUMIS respectfully requests that this Honorable Court issue a declaratory judgment in which the court declares (a) the rights and liabilities of CUMIS under its policy of insurance, (b) there is no coverage under the terms and conditions of the policy of insurance as identified as Exhibit 1 for the alleged claims raised in the Schorrig suit, (c) that CUMIS has now satisfied its obligation to provide a defense by payment of the first $100,000 of defense costs incurred by its insureds in the Schorrig suit, (d) that CUMIS is entitled to reimbursement from its insureds for all defense costs in excess of $100,000 as incurred in the Schorrig suit including interest, (e) that CUMIS has no obligation to satisfy any final judgment that may ultimately be entered in any litigation pending and/or filed against its insureds as a result of the matters asserted in the Schorrig suit, and (f) that the judgment entered in this cause is applicable to all members of the class (if the class is certified) in the Schorrig suit,  any (g) further relief which this Honorable Court deems just and proper, including but not limited to the costs of this litigation.

I HEREBY CERTIFY that on July 1, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

WICKER, SMITH, O'HARA, MCCOY & FORD, P.A.
Attorney for Plaintiff
515 E. Las Olas Boulevard
SunTrust Center, Suite 1400
P.O. Box 14460
Ft. Lauderdale, FL 33302
Phone: (954) 847-4800
Fax: (954) 760-9353
By: *Shelley H. Leinicke*
    Shelley H. Leinicke
    Florida Bar No. 230170