UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

Case No.: 11-CV-80762-RYSKAMP/VITUNAC

CUMIS INSURANCE SOCIETY, INC.,

    Plaintiff,

v.

CLAUDIA SCHORRIG et al.,

    Defendants.

_____/

### ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

**THIS CAUSE** comes before the Court on Defendants' motion to dismiss **[DE 14]** filed on August 22, 2011. Defendants IBM Southeast Employees' Federal Credit Union, Southeast Services Organization, and Barry Hughes (collectively, the "IBM Defendants") seek to dismiss this action on the grounds that this Court lacks subject matter jurisdiction, and, in the alternative, under the "first-filed" rule. Plaintiff CUMIS Insurance Society, Inc. ("CUMIS") filed its response **[DE 19]** on September 12, 2011. Defendants replied **[DE 32]** on September 28, 2011. This matter is ripe for adjudication.

**I.**     **Background**

This action is one of three separate actions arising from same events. The original action is a class action, filed June 30, 2009 by class representatives Claudia Schorrig and Jolene Sullivan, against the IBM Defendants (*Schorrig v. IBM Southeast Employees' Federal Credit Union et al.*, No. 09-cv-80973-KLR) (the "*Schorrig* action").[1] This action is currently pending

---

[1] Plaintiffs' motion for class certification is pending. *See Schorrig* **[DE 92]**.

1

before this Court. The proposed class consists of credit union members who purchased fraudulent bonds though Wellstone Securities, Inc., a third-party broker hired by the Credit Union to provide financial services to its members. The class action complaint alleges that the IBM Defendants breached their duty to conduct due diligence before entering into the agreement with Wellstone Securities. According to the complaint, an adequate investigation by the IBM Defendants into Wellstone's background would have revealed the fraudulent scheme, and the harm to the class members would not have occurred. The IBM Defendants sought a defense and indemnification from CUMIS, their insurer, pursuant to their insurance policy. The IBM Defendants and CUMIS underwent mediation regarding the scope of IBM Defendants' coverage under the policy. CUMIS ultimately agreed only to pay a maximum of $100,000 toward the IBM Defendants' defense costs in the *Schorrig* action.

Presumably dissatisfied with this result, on June 15, 2011 the IBM Defendants filed a two-count complaint against CUMIS, Schorrig, and Sullivan in state court (the "*IBM* action"). The first count is a breach of contract claim against CUMIS under the insurance policy. The second count seeks a declaratory judgment against CUMIS and the class members regarding the IBM Defendants' rights under the insurance policy with respect to the *Schorrig* action. On July 11, 2011, CUMIS removed the *IBM* action to the Southern District of Florida, and it is currently pending before Judge Kenneth A. Marra (*IBM Southeast Employees' Federal Credit Union et al v. Cumis Insurance Society, Inc. et al.*, No. 11-cv-80795-KAM).

On July 1, 2011, CUMIS filed the instant action against the IBM Defendants, Schorrig, and Sullivan in the Southern District of Florida (the "*CUMIS* action"). CUMIS seeks a declaratory judgment as to its rights and liabilities under the insurance policy with respect to the *Schorrig* action. The IBM Defendants seeks to dismiss the *CUMIS* action for lack of subject

matter jurisdiction on the grounds that the parties are not diverse, and, in the alternative, pursuant to the "first-filed" rule.

The IBM Defendants have also filed a motion to dismiss the *Schorrig* action on other grounds. *See Schorrig* **[DE 109]**. Also pending in the *Schorrig* action are summary judgment and discovery motions, as well as the motion for class certification. *See Schorrig* **[DE 92, 118, 119, 121]**. The Court postponed its consideration of these motions pursuant to the parties' representation that they have reached a settlement. On October 24, 2011, the class plaintiffs filed a motion for preliminary approval of class action settlement **[DE 145]**, also pending before this Court.

The IBM Defendants have filed a motion to remand the *IBM* action to state court on the same grounds as the instant motion to dismiss the *CUMIS* action—lack of diversity jurisdiction. *See IBM* **[DE 6]**. CUMIS subsequently filed a motion to transfer and consolidate the *IBM* action with the *CUMIS* action. In the alternative, CUMIS requests a stay of the *IBM* action pending resolution of the *CUMIS* action. *See IBM*, **[DE 18]**. Both motions are currently pending before Judge Marra.

In sum, all three actions arise from the same events and involve the same parties. The *Schorrig* action concerns the IBM Defendants' liability to the class members. Both the *IBM* and *CUMIS* actions concern CUMIS's and the IBM Defendants' rights and liabilities under the insurance policy with respect to the *Schorrig* action. The IBM Defendants wish to have the *CUMIS* action dismissed and to litigate the *IBM* action and the *Schorrig* action (in the event it does not settle) in state court. CUMIS wishes to litigate all three actions in federal court, either separately, or as one consolidated case.

**II.    Legal Standard**

"Subject matter jurisdiction based on diversity of citizenship exists in civil actions where the amount in controversy exceeds $75,000 and the action is between 'citizens of different States and in which citizens or subjects of a foreign state are additional parties.'" *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1247 (11th Cir. 2005) (quoting 28 U.S.C. § 1332(a)(3)). "Diversity jurisdiction requires complete diversity between named plaintiffs and defendants." *Id.* (citations omitted). The burden for establishing federal subject matter jurisdiction is on the party asserting jurisdiction. *Id.* (citation omitted). The diversity statute is to be strictly construed and any doubts should be resolved against finding jurisdiction. *Kantor v. Wellesley Galleries*, Ltd., 704 F.2d 1088, 1092 (9th Cir.1983). *See also Miedema v. Maytag Corp.*, 450 F.3d 1322, 1328 (11th Cir. 2006); *Whitt v. Sherman Int'l Corp.*, 147 F.3d 1325, 1329 (11th Cir. 1998).

Jurisdictional challenges under Federal Rule of Civil Procedure 12(b)(1) lie within the exclusive province of the trial court. *Morrison v. Amway Corp.*, 323 F.3d 920, 924-25 (11th Cir. 2003). "Attacks on subject matter jurisdiction under [Rule] 12(b)(1) come in two forms: 'facial attacks' and 'factual attacks.'" *Garcia v. Copenhaver, Bell & Associates, M.D.'s, P.A.*, 104 F.3d 1256, 1260-61 (11th Cir. 1997) (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir.1990)). "Facial attacks on the complaint require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Id.* at 1261 (internal quotation marks omitted). "Factual attacks, on the other hand, challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings…." *Id.* Thus, unlike a 12(b)(6) motion, the court may consider evidence outside of the pleadings, such as testimony and affidavits, and weigh the facts in order determine whether jurisdiction is proper. *Id. See also Morrison*, 323 F.3d at 924. "Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its

very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* (quoting *Lawrence*, 919 F.2d at 1529). "In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.* However, if the facts necessary to sustain jurisdiction implicate the merits of plaintiff's cause of action, the court is required to accept jurisdiction and decide the case on the merits. *Id.*

**III.    Analysis**

The only issue raised by the IBM Defendants' jurisdictional challenge is whether the parties in this case are completely diverse. The parties do not dispute the citizenship of plaintiff CUMIS (Iowa and Wisconsin), and defendants Schorrig and Sullivan (Florida); Southeast Services Organization (Florida); and Barry Hughes (Florida). The parties have differing views, however, with respect to the citizenship of the Credit Union. The Credit Union asserts that, as a federally chartered corporation, it is not a citizen of any state, thereby defeating diversity. CUMIS asserts that the Credit Union is a citizen of Florida because its activities are sufficiently localized in Florida.

The general rule for corporations is that for diversity purposes, a corporation is "deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business.'" *Sweet Pea Marine*, 411 F.3d at 1247 (quoting 28 U.S.C. § 1332(c)(1)). This rule, however, does not apply to federally chartered corporations, which are created and exist under the laws of the United States rather than state law. A federally chartered corporation which conducts activities in more than one state is "not a citizen of any state" for diversity purposes. *Bankers' Trust Co. v. Texas & P. Ry. Co.*, 241 U.S. 295, 301 (1916) (federally chartered railroad company not a citizen of Texas despite the fact that it was a

5

"resident and inhabitant" of Texas, and its principal place of business and principal operating and general offices were located in Texas). As such, diversity jurisdiction does not exist where one of the parties is a federally chartered corporation.[2] *See id.*

An exception to the *Bankers' Trust* rule exists where the corporation's activities are "sufficiently localized" in one state such that it may be deemed a citizen of that state. *Loyola Fed. Sav. Bank v. Fickling*, 58 F.3d 603, 606 (11th Cir. 1995) (citing *Westcap Gov't Secs., Inc. v. Homestead Air Force Base Fed. Credit Union*, 697 F.2d 911, 911-12 n.1 (11th Cir.1983)).[3] "The activities do not have to be 100% localized in order to trigger this exception." *Id.* Therefore, determining whether a federally chartered corporation is localized for diversity purposes is not simply a question as to whether its activities are exclusive to one state. *Id.* Rather, this inquiry requires a more expansive investigation into the corporation's business. *Id.* Courts may consider a variety of factors, including "the corporation's principal place of business, the existence of branch offices outside the state, the amount of business transacted in different states, and any other data providing evidence that the corporation is local or national in nature." *Id.* (citations omitted). "This more expansive approach comports with diversity jurisdiction's purpose of avoiding any possible bias favoring the party from the state in which the state court proceeding is brought." *Id.*

Here, both parties rely exclusively on the information contained in the affidavit of John V. Zells **[DE 14-2]**, executive vice president and chief marketing officer of the Credit Union, in

---

[2] In *Bankers' Trust Co.*, the plaintiff, a New York corporation sued a railroad company incorporated under Louisiana state law, and a federally-chartered railroad company with its principal place of business in Texas. The Supreme Court, rejecting plaintiff's argument that the federally-chartered corporation was a citizen of Texas, found that diversity jurisdiction did not exist. *Bankers' Trust*, 241 U.S. at 301.

[3] A second exception exists where Congress specifies a state of citizenship for jurisdictional purposes in the corporation's federal charter. *Fed. Home Loan Bank of Atlanta v. Countrywide Sec. Corp.*, No. 1:11-CV-489-TWT, 2011 WL 1598944 (N.D. Ga. Apr. 22, 2011). The Credit Union submits, and CUMIS does not dispute, that its federal charter contains no such provision.

arguing whether the Credit Union falls within this exception to the *Bankers' Trust* rule. According to the Zells affidavit, the Credit Union is wholly owned by its members and managed by a board of directors. Eight of its nine directors reside in Florida, and the remaining director resides in Georgia. Roughly half of the total business space owned or leased by the Credit Union is located in Florida, and over 60% of its permanent employees are located in Florida. In addition to Florida, the Credit Union is authorized to and does conduct business in Alabama, Georgia, Mississippi, Puerto Rico, and the Virgin Islands. The Credit Union has approximately 75,000 individual members, 44% of whom reside in Florida. Approximately 44% of the Credit Union's outstanding loans were made to its Florida members. The remaining 56% of the Credit Union's members reside in various states, countries, and territories outside of Florida. The Credit Union's members are individuals employed by or associated with particular entities affiliated with the Credit Union, referred to as "Select Employee Groups" or "SEGs." Approximately 65% of the SEGs are based in Florida. The Credit Union is able to provide nationwide services to its members through over 2,000 branches located across the nation, which are shared with other federally chartered credit unions. Twenty of these branches are wholly owned by the Credit Union, 30% of which are located in Florida. Members are also able to access their accounts through any of the over 45,000 Automated Teller Machines (ATMs) located throughout the country.

It is not clear from these facts whether the Credit Union's activities are sufficiently localized in Florida in order to confer citizenship or not. Both parties rely exclusively on the Zells affidavit, and offer differing interpretations of the facts contained therein. On the one hand, the Credit Union focuses on its significant presence outside of Florida in reaching the conclusion that it is not sufficiently localized. CUMIS, on the other hand, focuses on the fact that the Credit

Union's largest single presence is in Florida in concluding that it is indeed sufficiently localized. The Court does not disagree with either interpretation of the facts. However, CUMIS, the party asserting jurisdiction, has the burden of proof with respect to this issue. CUMIS, in a footnote, merely echoes the facts submitted by the Credit Union and offers a different, equally logical interpretation of Zells affidavit. This is insufficient. CUMIS also attempts to incorporate the arguments made by Schorrig and Sullivan in their response to the Credit Union's motion to dismiss in the underlying *Schorrig* action. This is improper, and the Court will not allow CUMIS to rely on argument and evidence set forth by *different parties* in a *different action*. The Court thus finds that CUMIS has not met its burden of establishing that the Credit Union's activities are sufficiently localized within the state of Florida. Moreover, a finding of no jurisdiction is appropriate in cases of ambiguity such as this.[4] Although it is apparent that the Credit Union conducts the majority of its business in Florida, it conducts a significant amount of its business in other states and territories. Based on the foregoing, the Court concludes that the Credit Union is not a citizen of any state, and diversity jurisdiction does not exist.

The Court, having no power to hear this case, must dismiss without consideration of the other issues raised by the parties pertaining to consolidation and the first-filed rule.

---

[4] The facts in *Loyola*, where the court found sufficient localization, were more conclusive. The federal corporation's principal place of business was located in Maryland; all but one of its thirty-one branch offices were located in Maryland; over two-thirds of its residential mortgages were located in Maryland; two-thirds of the loans that it serviced were secured with property located in Maryland; and, for the loans secured by property outside of Maryland, payments were made in Maryland. *Loyola*, 58 F.3d 603. *Cf. Fed. Home Loan Bank of Atlanta v. Countrywide Secs. Corp.*, No. 1:11-CV-489-TWT, 2011 WL 1598944 (N.D. Ga. Apr. 22, 2011) (insufficient localization to confer Georgia citizenship where federally chartered bank, whose primary office was located in Atlanta, had office space and personnel in the District of Columbia; operated in seven states and the District of Columbia; 77% of its members were chartered outside of Georgia; more than 95% of its advances were to members headquartered outside of Georgia; and 95% of its outstanding loans were to customers outside of Georgia).

## IV. Conclusion

The Court has carefully considered the motion, response, reply, applicable law, and pertinent portions of the record. For the foregoing reasons, it is hereby

**ORDERED AND ADJUDGED** that Defendants' motion to dismiss **[DE 14]** is **GRANTED** on the grounds this Court does not have subject matter jurisdiction over this case. The Clerk of Court is directed to **CLOSE THIS CASE** and **DENY** all pending motions as **MOOT**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida this 22 day of November, 2011.

/s/ Kenneth L. Ryskamp  
KENNETH L. RYSKAMP  
UNITED STATES DISTRICT JUDGE